1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  LANSING STENSON, M.D.,              No. 2:06-cv-02721-MCE-GGH

12         Plaintiff,

13     v.                              <u>MEMORANDUM AND ORDER</u>

14  JEFFERSON PILOT FINANCIAL
    INSURANCE COMPANY, a
15  corporation,

16         Defendant.

17                        ----oo0oo----

18

19       Lansing Stenson, M.D. ("Plaintiff") initiated the current

20  action against Jefferson Pilot Financial Insurance Company

21  ("Defendant") to recover, *inter alia*, Long Term Disability

22  ("LTD") benefits.  Presently before the Court is Defendant's

23  Motion for Summary Adjudication as to the interpretation of the

24  calculation of benefits under the Jefferson Pilot LTD Policy

25  ("Policy").  Defendant also seeks Summary Judgment as to

26  Plaintiff's Sixth Claim for Relief, which asks this Court to

27  issue a declaratory judgment as to Plaintiff's right to future

28  LTD benefits.

                              1

# BACKGROUND[1]

Plaintiff is a physician, surgeon, and co-founder of Sutter West Medical Group ("SWMG").  As an employee of SWMG, Plaintiff elected to purchase LTD insurance through SWMG.  While covered by Defendant's Policy, Plaintiff began to suffer from spinal cord and nerve root diseases, which eventually rendered him totally disabled.  Prior to his disability, Plaintiff's monthly salary was $37,000.

The parties currently dispute the manner in which Plaintiff's monthly benefits should be calculated and the extent of Plaintiff's future benefits.  The following Policy terms are relevant to Defendant's Motion:

> BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means 1/12th of the Insured Employee's annual gross earnings from the Employer during the calendar year just prior to the determination date.
>
> LONG-TERM DISABILITY BENEFITS
> Benefit Percentage: 60%
> Maximum Monthly Benefit: $10,000
> Minimum Monthly Benefit: $50
>
> BENEFIT.  The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period, if he or she:
> 1.    is Totally Disabled;
> 2.    is under the regular care of a Physician; and
> 3.    at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

---

[1] The background facts, which are not germane to the Court's current decision and serve merely to clarify the events leading up to this litigation, are taken from Plaintiff's First Amended Complaint ("FAC").  Defendant does not dispute these facts in its current Motion.

1      The Total Disability Monthly Benefit will cease on the
earliest of:

2      1.   the date the Insured Employee ceases to be Totally
          Disabled or dies;

3                          ...

4      3.   the date the Insured Employee is able, but chooses
          not to engage in Partial Disability Employment...

5

6      AMOUNT.  The amount of the Total Disability Monthly
Benefit equals:

7      1.   The Insured Employee's Basic Monthly Earnings
          multiplied by the Benefit Percentage (limited to
          the Maximum Monthly Benefit); minus

8      2.   Other Income Benefits

9      OTHER INCOME BENEFITS means those benefits shown below:

10      5.   Benefits under the United States Social Security
          Act...as follows:
          (a) disability or unreduced retirement benefits

11           for which the Insured Employee and any spouse or
          child receives, because of the Insured Employee's

12           Disability; or
          (b) reduced retirement benefits received by the

13           Insured Employee and any spouse or child because
          of the Insured Employee's receipt of reduced

14           retirement benefits.

15 Declaration of Heidi E. Dross ("Dross Decl."), Exh. A, JP3 0035,

16 JP3 0036, JP3 0052, JP3 0055.

17      Additionally, SWMG provided its employees with a Summary

18 Plan Description ("SPD") regarding the Policy. Dross Decl., ¶ 4.

19 The SPD stated, in part:

20      MONTHLY BENEFIT.  If you are Totally Disabled beyond
the Elimination Period due to a covered injury or

21      sickness, you will be eligible to receive a monthly
benefit equal to 60% of your basic monthly income, up

22      to a maximum benefit of $10,000.  This benefit may be
reduced by income benefits from certain other sources

23      as listed in your certificate.

24 Dross Decl., Exh. B, JP2-0767.

25      Based on the above Policy language, Defendant's Motion for

26 Summary Adjudication as to the calculation of the benefits

27 Plaintiff receives each month is granted.

28 ///

Additionally, Defendant's Motion for Summary Judgment as to Plaintiff's Sixth Claim for Relief, which seeks a declaratory judgment that Plaintiff is entitled to lifetime LTD benefits, is also granted.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party claiming relief may move ... for summary judgment on all or part of the claim."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

///

///

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing
> the district court of the basis for its motion, and
> identifying those portions of 'the pleadings,
> depositions, answers to interrogatories, and admissions
> on file together with the affidavits, if any,' which it
> believes demonstrate the absence of a genuine issue of
> material fact.

Celotex at 323(quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

///

///

///

///

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

6

1

**ANALYSIS**

2      **A.   The Policy Unambiguously Mandates the Manner in Which**
3           **the Total Monthly Disability Benefit is to Be**
           **Calculated.**

4

5           Plaintiff alleges in his Complaint that Defendant breached

6      the terms of the LTD Plan by reducing his monthly disability

7      benefits by the amount of Social Security benefits that Defendant

8      claims he and his dependent receive.  FAC, ¶ 1(g).  Plaintiff

9      further alleges that the Policy entitles him to receive the

10     maximum benefit of $10,000 per month.  Id.  Defendant concedes

11     that its interpretation of the LTD Policy and subsequent

12     calculation of Plaintiff's LTD benefits is subject to *de novo*

13     review by this Court.

14          In Evans v. Safeco Life Ins. Co., the Ninth Circuit stated

15     that "the interpretation of an ERISA insurance policy is

16     'governed by a uniform body of federal law.'"  916 F.2d 1437,

17     1441 (9th Cir. 1990) (quoting Sampson v. Mutual Benefit Life Ins.

18     Co., 863 F.2d 108, 109-110 (1st Cir. 1988)).

19          We interpret terms in ERISA insurance policies "in an
           ordinary and popular sense as would a [person] of
20         average intelligence and experience."  We will "not
           artificially create ambiguity where none exists.... If
21         a reasonable interpretation favors the insurer and any
           other interpretation would be strained, no compulsion
22         exists to torture or twist the language of the policy."

23

24     Id. (quoting Allstate Ins. Co. v. Ellison, 757 F.2d 1042, 1044

25     (9th Cir. 1985)) (internal citations omitted)).

26     ///

27     ///

28     ///

1    Notably, the parties do not dispute that Plaintiff is

2   totally disabled and is entitled to LTD benefits under the

3   Policy, nor do they dispute the meaning of the terms material to

4   the interpretation of the Policy.  Rather, the parties dispute

5   only the calculation of the amount to which Plaintiff is

6   entitled.  Plaintiff argues that the order of operations of the

7   calculation of the Total Disability Monthly Benefit is ambiguous

8   and subject to his interpretation.  Defendant argues that the

9   provided method of calculating the Total Disability Monthly

10  Benefit is unambiguous and results in an outcome that differs

11  from that reached under Plaintiff's theory.  The relevant Policy

12  language states:

13          AMOUNT.  The amount of the Total Disability Monthly
            Benefit equals:
14      1.   The Insured Employee's Basic Monthly Earnings
                 multiplied by the Benefit Percentage (limited to
15               the Maximum Monthly Benefit); minus
        2.   Other Income Benefits
16

17    According to Defendant, Total Disability Monthly Benefits

18  are calculated by first multiplying the Insured Employee's Basic

19  Monthly Earnings by the Benefit Percentage.  This amount is then

20  limited by the $10,000 Maximum Monthly Benefit.  Next, Other

21  Income Benefits are subtracted from that reduced amount to

22  determine the Amount owed.

23    Applied to the current facts, Plaintiff's monthly income of

24  $37,000 is multiplied by the Benefit Percentage, which is 60%.

25  That percentage reduces his income to $22,200.00.  Since

26  Plaintiff's reduced income exceeds the Maximum Monthly Benefit,

27  his benefits are limited to $10,000.

28  ///

1 Thereafter, the $10,000 Maximum Monthly Benefit is reduced by any
2 Other Income Benefits that Plaintiff receives, in this case
3 allegedly $2,827, which is the combined total of both Plaintiff's
4 and his dependant's Social Security Benefits.  Dross Decl., 3:13-
5 17.  Hence, Plaintiff receives $7,173 each month.

6    Plaintiff disagrees with this interpretation.  He argues
7 Defendant breached the terms of the LTD plan by "[r]educing the
8 monthly benefit amounts paid to plaintiff ... by the amount of
9 Social Security benefits Jefferson Pilot claimed plaintiff
10 received notwithstanding such deductions were contrary to the
11 terms of the contract and plaintiff was entitled to the maximum
12 benefit of $10,000 per month."  FAC, ¶ 100(g).  Plaintiff argues
13 that, based on the language in the SPD, his Other Income Benefits
14 should first be deducted from his Basic Monthly Earnings prior to
15 applying the Benefit Percentage.  Plaintiff's interpretation
16 changes the above calculations as follows:

17    Basic Monthly Earnings of $37,000 less Other Income of
      $2,827 equals $34,173. 00, which is then reduced to the
18    Maximum Monthly Benefit of $10,000.

19 Plaintiff's interpretation is contrary to the plain and
20 unambiguous language of the Policy as well as the SPD.  The
21 Policy clearly establishes the order of operations to be followed
22 in making the disputed calculation.  The semicolon in the
23 applicable language makes it evident that the subtraction of
24 Other Income Benefits occurs only after all other calculations
25 have been made.  Therefore, not only must the Basic Monthly
26 Earnings be reduced by the Benefit Percentage, but that result
27 must then be limited by the parenthetical also preceding the
28 semicolon.

1 That parenthetical mandates that any calculation in excess of the

2 Monthly Maximum Benefit be reduced to $10,000.  It is only after

3 the reduction to the Monthly Maximum Benefit amount that one

4 reading the clause would reach the semicolon to take the further

5 step of subtracting Other Income Benefits.

6      That interpretation is entirely consistent with SWMG's SPD

7 which provides:

8     MONTHLY BENEFIT.  If you are Totally Disabled beyond
the Elimination Period due to a covered injury or
9     sickness, you will be eligible to receive a monthly
benefit equal to 60% of your basic monthly income, up
10     to a maximum benefit of $10,000.  This benefit may be
reduced by income benefits from certain other sources
11     as listed in your certificate.

12 Dross Decl., Exh. B (emphasis added).  Again, under this

13 language, it is only after the Monthly Benefit is reduced to

14 $10,000 that the reduction for Other Income Benefits occurs.

15 Plaintiff's argument that the phrases "monthly benefit" and

16 "maximum benefit" create ambiguity and conflict with the language

17 of the Policy is entirely unreasonable.

18      Therefore, the Court finds that the Policy requires the

19 monthly benefit to be calculated as follows:

20     Step 1:    Plaintiff's Basic Monthly Earnings are
multiplied by the Benefit Percentage.
21     Step 2:    If the result from Step 1 exceeds the Maximum
Monthly Benefit, that result is reduced to
22     the Maximum Monthly Benefit, in this case
$10,000.
23     Step 3:    Other Income Benefits are subtracted from the
result in Step 2 to reach the final Total
24     Disability Monthly Benefit Amount.

25 ///

26 ///

27 ///

28 ///

1   Hence, Defendant's Motion for Summary Adjudication as to the

2   manner in which benefits are calculated is granted.[2]

3

4       **B.   There is no Sufficient Controversy Between the Parties
5              to Justify Declaratory Judgment as to Future Benefits.**

6           Plaintiffs have styled their Sixth Claim as one for

7   declaratory relief.  The operation of the Declaratory Judgment

8   Act is procedural only.  Skelly Oil Co. v. Phillips Petroleum

9   Co., 339 U.S. 667, 671, 94 L. Ed. 1194, 70 S. Ct. 876

10  (1950)(citations and quotations omitted).  Generally, declaratory

11  judgment actions are justiciable if "under all the circumstances,

12  ... there is a substantial controversy, between parties having

13  adverse legal interests, of sufficient immediacy and reality to

14  warrant the issuance of a declaratory judgment."  Maryland Cas.

15  Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 85 L. Ed. 826,

16  61 S. Ct. 510 (1941).  "[D]eclaratory relief is appropriate (1)

17  when the judgment will serve a useful purpose in clarifying and

18  settling the legal relations in issue, and (2) when it will

19  terminate and afford relief from the uncertainty, insecurity, and

20  controversy giving rise to the proceeding."  Eureka Fed. Sav. &

21  Loan Ass'n v. Am. Cas. Co., 873 F.2d 229, 231 (9th Cir.

22  1989)(citations omitted).

23  ///

24  ///

25  _____

26       [2] There are not enough facts before the Court on this Motion
    to determine whether Defendant actually processed these
27  calculations correctly.  The Court limits its holding to the
    manner in which the monthly benefits are to be calculated and
28  withholds judgment as to the actual calculations themselves.

                                    11

1    Plaintiff specifically seeks a declaration that "for the

2   rest of his life he is entitled to receive the maximum benefit of

3   $10,000 per month under the LTD contract he purchased from

4   Jefferson Pilot." Compl., ¶ 104.   Defendant seeks summary

5   judgment on the Plaintiff's claim, or, alternatively, summary

6   adjudication of the "fact that the plan does not authorize

7   benefits for any future period of disability."   Motion, 10:11-14.

8   The relevant Policy language states:

9       BENEFIT.  The Company will pay a Total Disability
        Monthly Benefit to an Insured Employee, after the
10      completion of the Elimination Period, if he or she:
        1.    is Totally Disabled;
11      2.    is under the regular care of a Physician; and
        3.    at his or her own expense, submits proof of
12            continued Total Disability and Physician's care to
              the Company upon request.
13

14      The Total Disability Monthly Benefit will cease on the
        earliest of:
15      1.    the date the Insured Employee ceases to be Totally
              Disabled or dies;
16                      ...
        3.    the date the Insured Employee is able, but chooses
17            not to engage in Partial Disability Employment...

18      As in the prior discussion, this Policy language is also

19  unambiguous.  According to the Policy, there are several

20  conditions that must be met in order for the insured to be

21  entitled to the Total Disability Monthly Benefit.  Additionally,

22  in order to continue to receive the Total Disability Monthly

23  Benefit, the insured, must, *inter alia*, be living, remain Totally

24  Disabled, and be unable to work, even part-time.

25      Ultimately, the issue before the Court is decidedly narrow.

26  Plaintiff asks for a specific declaration as to the amount of

27  benefits he is entitled to receive and the duration over which he

28  should receive such payments.

First, as already discussed, *supra*, this Court has determined that Plaintiff is not entitled to receive $10,000 per month if he is receiving any Other Income Benefits which would offset that amount.  Therefore, while Plaintiff is limited to the Maximum Benefit Amount under the terms of the Policy, Plaintiff is not necessarily entitled, now or in the future, to <u>receive</u> that $10,000 amount each month.

Moreover, it would be entirely speculative for this court to presume that all relevant circumstances will remain static for the remainder of Plaintiff's life.  Plaintiff asks the Court to assume, *inter alia*, not only that he will remain Totally Disabled, but also that he will never be able to engage in Partial Disability Employment, or, if he was so able, that he would not refuse the opportunity.  Based on the current record, the Court cannot make such a declaration.

Finally, it would be inappropriate for this Court to grant Plaintiff's Sixth Claim for Relief because there is not a sufficient controversy between the parties to warrant a declaratory judgment.  "A 'controversy' in this sense must be one that is appropriate for judicial determination.  A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.  The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

1    <u>Aetna Life Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227,

2    240-241 (1937) (internal citations omitted).  "The difference

3    between an abstract question and a 'controversy' contemplated by

4    the Declaratory Judgment Act is necessarily one of degree, and it

5    would be difficult, if it would be possible, to fashion a precise

6    test for determining in every case whether there is such a

7    controversy.  Basically, the question in each case is whether the

8    facts alleged, under all the circumstances, show that there is a

9    substantial controversy, between parties having adverse legal

10   interests, of sufficient immediacy and reality to warrant the

11   issuance of a declaratory judgment."  <u>Maryland Cas. Co.</u> 312 U.S.

12   at 273 (citing <u>Aetna Life Ins. Co.</u> 300 U.S. at 239-242).

13        Notably, Defendant does not dispute that, if Plaintiff

14   continues to meet the conditions required by the contract, he

15   will continue to receive LTD benefits under the Policy.

16   Defendant has not refused, nor threatened to refuse, to pay

17   Plaintiff's claims.  The only dispute between the parties is as

18   to the amount of the LTD benefit, not as to whether or not that

19   benefit should be paid.  The latter dispute is purely

20   hypothetical.  Therefore, there is no current controversy between

21   the parties sufficient to warrant declaratory relief.  Such a

22   judgment would require the Court to issue an advisory opinion and

23   that it cannot do.  Defendant's Motion for Summary Judgment on

24   Plaintiff's Sixth Claim for Relief is granted.

25   ///

26   ///

27   ///

28   ///

14

**CONCLUSION**

Since the Policy language is unambiguous, as is the order of operations required to calculate the LTD benefits due Plaintiff under the Policy, Defendant's Motion for Summary Adjudication as to the manner of that calculation is GRANTED.[3]  Defendant's Motion for Summary Judgment as to Plaintiff's Sixth Claim for Relief is GRANTED as well because there is no controversy between the parties sufficient to warrant declaratory relief.

IT IS SO ORDERED.


Dated: June 11, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefing.  E.D. Cal. Local Rule 78-230(h).